FILED

February 13, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 8:03 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| SHERRY DECKER | ) | Docket No: 2016-05-0900 |
| Employee, | ) | |
| | ) | |
| v. | ) | State File Numbers: 5883-2015 |
| | ) | |
| MTEK INC. | ) | |
| Employer, | ) | Judge Dale Tipps |
| And | ) | |
| | ) | |
| SOMPO JAPAN INS. CO. OF AM. | ) | |
| Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned workers' compensation judge on February 1, 2017, on the Request for Expedited Hearing filed by Sherry Decker. The present focus of this case is whether Ms. Decker is entitled to medical benefits, specifically, shoulder surgery recommended by her authorized treating physician (ATP), Dr. Chad Price. The central legal issue is whether Ms. Decker is likely to establish at a hearing on the merits that her current need for surgery arises primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court holds Ms. Decker is not entitled to the requested medical benefits at this time.

### History of Claim

The following facts were established at the hearing. After working as a mold operator for several years, Ms. Decker suffered a work accident when she tripped and fell at MTEK on January 21, 2015. She reported injuries to her left knee and right shoulder, and MTEK accepted the claim as compensable. After treating briefly at a clinic, Ms. Decker selected orthopedic surgeon, Dr. William Jekot, from a panel provided by MTEK.

Dr. Jekot first saw Ms. Decker on January 29, 2015. She reported "sharp and

1

throbbing right shoulder pain," as well as left knee pain. She denied any previous problems with her shoulder or knee. Dr. Jekot noted a patellar fracture but felt the shoulder injury did not appear to be serious. He ordered x-rays and physical therapy and assigned temporary light duty restrictions.

When Ms. Decker returned to Dr. Jekot in March, she reported "sharp right shoulder pain for two months with moderate intensity." Dr. Jekot noted "slight anterior tenderness" with full range of motion and normal strength. At Ms. Decker's request, he returned her to full duty, but instructed her to return in one month. He noted, "If the patient continues to have right shoulder pain we will consider an MR arthrogram of the right shoulder."

On Ms. Decker's last visit in April, he noted, "She is much improved with very minor right shoulder pain." His examination of the shoulder showed, "no tenderness, no effusion, no increased warmth, full range of motion, strength, and stability." He placed her at maximum medical improvement (MMI) and noted she had no permanent impairment.

Dr. Jekot testified in his deposition that, if Ms. Decker had a labrum tear associated with her January 2015 fall, her symptoms would be "pretty constant" from her date of injury until she saw Dr. Price. Further, he stated that her shoulder examination at her last visit was "entirely normal" with no sign of labral pathology. Therefore, he did not feel Ms. Decker had a labral tear at the time he treated her. He therefore agreed with Dr. Vissers' opinion that the tear was unrelated to Ms. Decker's work accident.

Ms. Decker testified during the hearing that she told Dr. Jekot her shoulder hurt all the time, including during her last visit with him. Her understanding from Dr. Jekot was that she had a sprained shoulder and it was simply going to take a long time to improve. As a result, even though she had constant pain while she worked, she did her job without complaining to her supervisors or requesting additional treatment. When asked to describe her physical problems at work, she said she had pain when she lifted her arm overhead during morning exercises, when she lifted buckets of resin, and when she did any reaching to stack or check parts. On cross-examination, she characterized her pain as "horrible" pain that kept her from sleeping at night and that began as soon as she returned to full duty.

Josh Steverson, Ms. Decker's supervisor, testified that he performed a production review with Ms. Decker at least three times between her return to full duty and her retirement. This included observing her performing her job and going through a questionnaire with her. He confirmed she never mentioned any problems or pain doing her work, and he never observed her having any problems. MTEK's occupational health nurse, Cindy Ferrell, echoed this testimony.

Ms. Decker last worked at MTEK on June 25, 2015, the day before a scheduled plant shutdown. She decided not to return to her job because she did not feel she could continue to deal with the shoulder pain it caused. Instead, she took her retirement from MTEK and began working a part-time job as a housekeeping supervisor at Hampton Inn on June 27. Ms. Decker testified she never suffered any injury or accident while working at Hampton Inn, but she acknowledged she worked nearly full-time hours for several weeks while training. She also admitted that her duties during this training period included standard housekeeping duties such as cleaning, making beds, and laundry.

Because of continuing pain, Ms. Decker requested an MRI of her shoulder at the Veterans Administration in August 2015. After receiving the MRI results, she requested additional treatment from MTEK, which provided a new physician panel because Dr. Jekot had retired from practice. Ms. Decker selected Dr. Chad Price and saw him on January 13, 2016. She reported having right shoulder pain since her fall in January 2015 and told Dr. Price her symptoms were worsening. After examining Ms. Decker and reviewing the MRI films, Dr. Price felt she had a torn labrum. He also noted, "I do believe that it is more likely than not that the injury occurred from the patient's injury on 1/21/15."

Dr. Price's May 18 progress note states:

Her initial imaging appeared to show a small nondisplaced superior labrum tear but it was not able to be confirmed due to the lack of contrast in the joint. After further reviewing the records it looks like she received some relief from conservative treatment and had a period of being asymptomatic. She has subsequently quit her job at MTEK and has started working Hampton Inn and Suites. Her shoulder has started bothering her again and we have obtained an MRI arthrogram for further evaluation.

He later noted:

Ms. Decker has a confirmed tear of the anterior/superior horn. These findings are consistent with her reported mechanism of injury during the work injury on 1/21/15. Interestingly, there is also evidence of a full thickness supraspinatus tear. On exam she has weakness with rotator cuff strength and pain with labral testing. Due to the fact that there was no evidence of rotator cuff tear on previous imaging immediately following the injury, I cannot relate the rotator cuff tear to her injury. However, I do believe the labrum tear is a direct result of her initial work injury on 1/21/15. At this point I have recommended arthroscopic biceps tenodesis, subacromial decompression, and rotator cuff repair.

In response to a questionnaire from Ms. Decker's attorney, Dr. Price indicated he

3

believed the right shoulder labrum tear arose primarily out of Ms. Decker's January 2015 work accident and that she would need surgical repair even if there were no rotator cuff tear. In his deposition, Dr. Price confirmed that opinion. The primary basis for this conclusion was Ms. Decker's statement that she had no shoulder pain prior to the work injury and the fact that the first MRI showed a labral tear. He disagreed with Dr. Vissers' conclusions and testified that, whether or not Ms. Decker's symptoms increased and decreased during the course of her treatment, his opinion would not change, as "on-and-off" symptoms are not unusual with labrum injuries.

In addition to the medical records, the parties submitted reports from Dr. Christian Vissers and Dr. Chad Calendine.

Dr. Vissers performed a second-opinion evaluation on February 17, 2016. He noted that Ms. Decker initially treated with Dr. Jekot, but "her symptoms resolved and she was placed at maximum medical improvement on 3/22/15." His history also includes the following: "The patient states that she has been experiencing pain since sometime in the fall of 2015." He assessed a labral tear but stated, "the patient's superior labral tear is not related to her work injury of 1/21/15. The patient was completely asymptomatic for a period of several months; additionally, I do not feel that the patient's stated mechanism of injury is consistent with her labral pathology."

Dr. Calendine is a radiologist who performed a records review at the request of MTEK. He noted:

> On the initial MRI which was done approximately 7 months after the injury, there are chronic findings of supraspinatus tendinopathy with a very small partial thickness undersurface tear at its attachment, infraspinatus tendinopathy, AC joint hypertrophy, and a minimally displaced SLAP tear of the labrum. All of these findings appear chronic (i.e. not acute), and all of these findings are typical of degenerative changes involving the shoulder. On the subsequent MRI of the shoulder, the patient developed a full-thickness supraspinatus tendon tear which is the expected progression of chronic tendinopathy and findings of chronic impingement syndrome. The SLAP tear of the labrum is unchanged on the subsequent MRI. This SLAP tear appears chronic.

At the hearing, Ms. Decker asserted she is entitled to additional medical treatment, including the labral repair surgery recommended by Dr. Price. She further argued her surgery should include rotator cuff repair, even though the rotator cuff tear is not causally related to her January 2015 work accident. She denied aggravating or further injuring her shoulder while working at Hampton Inn or anywhere else since leaving MTEK.

MTEK countered that Ms. Decker's need for labrum repair surgery is not causally

4

related to her workplace fall. It argued that the preponderance of the medical proof fails to support a finding that her need for this treatment arises primarily out of her work injury. It also noted that Ms. Decker's torn rotator cuff did not arise from her work injury and contended there is no authority for the Court to order surgical repair of a non-compensable condition.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Ms. Decker need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id*.; Tenn. Code Ann. § 50-6-239(d)(1)(2016).

In order to prevail at a hearing on the merits, Ms. Decker must prove the compensability of the condition for which she seeks surgical treatment. To do so, she must show that her labral tear arose primarily out of and in the course and scope of her employment. *Id*. at § 50-6-102(14). This means she must show the tear was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. *Id*. at § 50-6-102(14)(A). Further, she must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id*. at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id*. at § 50-6-102(14)(D).

The Court first notes there is no dispute that Ms. Decker established a specific incident, identifiable by time and place. The question to be resolved, therefore, is whether she appears likely to prove she tore her labrum during that incident. This is a close question, but applying the foregoing principles to the facts of this case, the Court cannot find, at this time, that Ms. Decker is likely to meet this burden.

As noted above, the parties submitted conflicting medical opinions. Two of those opinions, Dr. Price's and Dr. Jekot's, are entitled to particular consideration because Ms. Decker selected these doctors from a panel offered by MTEK. Tennessee Code Annotated section 50-6-102(14)(E) establishes a rebuttable presumption of correctness for a causation opinion given by an authorized physician. Unfortunately, this provision is not determinative in this case because the two doctors entitled to the presumption have given conflicting opinions. In the absence of a single presumption, the Court must determine whether Ms. Decker is likely to prevail in proving causation by a preponderance of the medical evidence.

Dr. Jekot's opinion that the labral tear was not related to Ms. Decker's work accident was based primarily on two factors. First, he felt that a torn labrum would cause "pretty constant" symptoms the date of injury until Ms. Decker first saw Dr. Price. This was not the case with Ms. Decker because he noted her symptoms were "much improved with very minor right shoulder pain" the last time he saw her. Second, her shoulder examination – in particular her O'Brian's test – at her last visit was "entirely normal" with no sign of labral pathology.

Dr. Vissers' report supports Dr. Jekot's conclusion. In addition to noting the symptom resolution in Dr. Jekot's treatment notes, Dr. Vissers' history includes the notation that Ms. Decker "has been experiencing pain since sometime in the fall of 2015." Based on this statement, he concluded the labral tear was not related to the January 21, 2015 work accident injury.

Similarly, the radiologist, Dr. Calendine, did not feel the tear was work-related. Although he noted the initial MRI showed a number of findings, he believed all of them, including the labrum tear, were chronic changes and not acute injuries.

The only conflicting causation opinion was that of Dr. Price, who concluded the work injury caused the tear because Ms. Decker had no prior shoulder pain. The resolution (or near-resolution) of her symptoms while treating with Dr. Jekot did not affect Dr. Price's opinion because he felt this was consistent with a labrum injury.

After weighing the medical opinions presented, the Court cannot find at this time that Ms. Decker appears likely to prove by a preponderance of the medical evidence that her torn labrum occurred during her January 2015 workplace accident. It is unrebutted that Ms. Decker's last examination with Dr. Jekot was entirely normal with no sign of labral pathology. Further, Dr. Price's opinion differs from that of Dr. Jekot and Dr. Vissers primarily because he did not feel it would be unusual for Ms. Decker's symptoms to increase and decrease during the course of her treatment. Dr. Jekot disagreed, saying that in his personal and professional experience, a labral tear would result in "pretty constant" symptoms. As neither doctor provided any scientific foundation or explanation for these statements, the Court has no basis upon which to credit one over the other. In the absence of a remedial construction of the law,[1] such an impasse cannot be resolved in favor of Ms. Decker, as she bears the burden of proof. Therefore, Dr. Price's opinion, without more, does not constitute a preponderance of medical evidence that Ms. Decker's work accident was the primary cause of her labral tear.

The Court recognizes that Ms. Decker disputes that her symptoms ever resolved or even waned significantly. She testified during the hearing that she suffered constant,

---

[1] *See* Tennessee Code Annotated section 50-6-116 (2016).

significant pain every day after her return to work and that the pain kept her from sleeping or being able to roll over in bed. This testimony, however, is irreconcilable with Dr. Jekot's observations and the history recorded by Dr. Vissers. It is also inconsistent with the testimony of Mr. Steverson, who both observed Ms. Decker doing her job and discussed her work without any mention of pain or ongoing problems. Similarly, even though Ms. Decker had conversations with Ms. Ferrell about medical mileage requests and her intent to retire, she never mentioned any continuing problem with her shoulder or request additional treatment. Further, even though Ms. Decker testified that she retired from MTEK because of her shoulder problems, she did not tell Ms. Ferrell that was the reason for her decision to retire.

Ms. Decker countered these inconsistencies by explaining that Dr. Jekot told her she had a sprain that would take time to heal and she was patiently waiting for her shoulder to improve. In her words, "I don't complain, I cope." The Court has no reason to doubt Ms. Decker's claim that she is not a complainer, but it is difficult to understand why, if she were suffering from severe, unremitting pain, she failed to report it to Dr. Jekot, declined the diagnostic tests he offered, and requested a release to full duty.

Based on the foregoing, as a matter of law, Ms. Decker has not come forward with sufficient evidence from which the Court can conclude she is likely to prevail at a hearing on the merits. Her request for the surgical treatment recommended by Dr. Price is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Decker's claim against MTEK and its workers' compensation carrier for the requested medical benefits is denied.

2. This matter is set for a Scheduling Hearing on **April 5, 2017**, at **9:00 a.m**. You must call 615-741-2112 or toll free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

**ENTERED this the 13th day of February, 2017.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

7

**APPENDIX**

Exhibits:
1. Employer's indexed medical records
2. Employee's indexed medical records
3. First Report of Injury
4. C-42 Physician Panel
5. Housekeeping Supervisor job description
6. Deposition Transcript of Dr. William Jekot
7. Deposition Transcript of Dr. Chad Price
8. Mileage request
9. Sworn statement of Cindy Ferrell

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 13th day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Julie Reasonover | | | X | Julie@jstillman.com |
| Brett Burrow | | | X | bburrow@burrowlee.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov